UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRAYAN RUBIO RUBIO,

      Plaintiff,

    v.

SHERIFF DAVID HARDIN,
GARRET RIPA, ACTING
DIRECTOR TODD M. LYONS,
SECRETARY KRISTI NOEM,
DAREN K MARGOLIN,

      Defendants.

_____/

Case No. 2:26-cv-125-KCD-NPM

## **ORDER**

Petitioner Brayan Rubio Rubio is back before this Court. Not long ago, the Court granted his habeas petition and ordered the Government to provide him with a bond hearing under 8 U.S.C. § 1226(a). (*See* Doc. 13.) The Government did technically hold a proceeding a few weeks later, but to call it a "hearing" stretches that word past its breaking point. Right at the start, the immigration judge openly admitted that he had not read any of the evidence submitted by Rubio's counsel. Relying on the Government's evidence, which mind you was submitted only hours before the hearing, the immigration judge found Rubio to be a flight risk. Left with a bond denial that systematically ignored every single equity in his favor, Rubio has now filed a supplemental petition. He argues that this perfunctory exercise was a sham

that violated the Due Process Clause of the Fifth Amendment. For the reasons below, the supplemental petition is **GRANTED**. The Government is directed to provide a new bond hearing that complies with INA regulations *and* the Fifth Amendment.

The Government first raises a jurisdictional shield. It argues that 8 U.S.C. § 1226(e) strips this Court of any authority to second-guess an immigration judge's discretionary bond determinations. But the Government misunderstands the nature of the issue presented. While § 1226(e) bars review of discretionary judgments, it does not close the courthouse doors to constitutional challenges regarding the adequacy of the process itself. *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018); *see also Castillo v. ICE*, No. 25-25296-CV, 2025 WL 4689387, at *5 (S.D. Fla. Dec. 19, 2025) ("Courts have repeatedly concluded that § 1226(e) does not preclude challenges to the procedures used in custody determinations under § 1226.").

Rubio's supplemental petition is not an attack on the outcome of his hearing, but on the process. Let's be clear about what this Court is—and is not—doing. We are not stepping into the shoes of the immigration judge to reweigh the equities, make credibility calls, or micromanage discretionary judgments. Nor are we dictating whether the immigration judge must ultimately choose to allow or deny bond. This Court decides only a narrow, structural question: did the immigration judge make his determination using

the legally correct procedural framework and follow what the Due Process Clause demands? Section 1226(e) does not bar that kind of inquiry. *See Lopez v. Paulk*, No. 7:26-CV-00029-WLS-ALS, 2026 WL 961948, at *2 (M.D. Ga. Apr. 6, 2026).

The Government insists that Rubio "cannot show a due process violation where the IJ considered the proper factors before ultimately concluding that [he] did not merit a bond." (Doc. 19 at 4.) That argument also misses the point. The issue here is not whether the immigration judge recited the appropriate factors from *Matter of Guerra*, 24 I. & N. Dec. 37, 41 (BIA 2006). It is that he completely failed to consider the actual evidence submitted to support them. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). For a hearing to be meaningful, the decisionmaker must actually engage with the evidence presented. That did not happen here.

The Government seems to think that if the immigration judge said the magic words—verbally running through presence, family ties, and criminal history—the constitutional box is checked. But a legal factor is not an empty abstraction. It is a tool meant to organize, evaluate, and weigh *actual facts* in the record. When a judge explicitly admits the has not looked at a single page of the petitioner's evidence, as here, the subsequent "analysis" of those factors

3

is beyond flawed. "[M]erely stating the proper standard does not discharge the obligation to correctly apply the standard." *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025).

The Government also attempts to shift the blame for this procedural breakdown onto Rubio, characterizing his evidence packet as an "eleventh hour" surprise that arrived too late for the immigration judge to meaningfully consider. (Doc. 19 at 6.) It is a convenient narrative, but it completely falls apart under close scrutiny. For starters, Rubio's evidence was not new. An identical packet was filed as part of the bond redetermination request that gave rise to this entire habeas case. When this Court ordered the post-habeas hearing, Rubio's counsel discovered that the immigration court had failed to link the existing electronic file to the new proceeding. So he re-transmitted the documents to ensure a complete record. (Doc. 23 at 3.) To call this an eleventh-hour filing misrepresents what actually happened. Furthermore, while the Government helpfully invokes regulations allowing immigration judges to set strict filing timelines, it conspicuously fails to point to any deadline that was actually set—or missed—in this case. (Doc. 19 at 6.)

Even if we assume the immigration judge truly lacked the time to review Rubio's late-afternoon filings, that rule should have applied evenly across the board. Yet, the Government apparently played by the exact same clock, submitting its own evidence a mere hour before the hearing. (Doc. 23 at

4

3-4.) The immigration judge managed to receive, review, and rely heavily on the Government's last-minute submission, while shutting his eyes completely to Rubio's files. Due process does not run on a one-way street.

The Court is fully satisfied that Rubio was deprived of the individualized bond hearing that the Due Process Clause requires in this context. When a decisionmaker explicitly chooses to remain blind to an extensive evidentiary record, the resulting hearing is not a meaningful opportunity to be heard—it is a perfunctory exercise with a predetermined outcome. *See Castillo*, 2025 WL 4689387, at *7.

The question then shifts to the appropriate remedy. Rubio asks this Court to cut through the red tape and order his immediate release from custody. The temptation to do so is understandable when the Government fumbles the procedural ball this badly, but federal courts must respect the structural boundaries of immigration enforcement. The Supreme Court has long established that when an administrative agency deprives an individual of procedural due process, the standard remedy is to cure the procedural defect by providing the proper process, not to permanently displace the agency's statutory authority. *See Nguyen v. Noem*, 797 F. Supp. 3d 651, 663-64 (N.D. Tex. 2025). Because the executive branch retains the statutory discretion to make the initial custody determination under 8 U.S.C. § 1226(a), this Court is not prepared to order Rubio's immediate release. *See Munaf v.*

*Geren*, 553 U.S. 674, 693 (2008) ("The question, therefore, even where a habeas court has the power to issue the writ, is whether this be a case in which [that power] ought to be exercised."). Instead, the Government must give Rubio what the Constitution and this Court's prior order required all along: a brand-new, genuinely individualized bond hearing. This time, the immigration judge must fully consider the entire record, weigh the countervailing equities, and meaningfully evaluate whether alternatives to detention can mitigate any flight risk. And, it should go without saying, the judge will actually need to read the file.

For the reasons given, Rubio's Supplemental Petition (Doc. 15) is **GRANTED IN PART AND DENIED IN PART**. The Government shall comply with this order and provide Rubio a legally sufficient bond hearing on or before May 25, 2026, or otherwise release him by that time. All other or different relief sought is denied.

**ORDERED** in Fort Myers, Florida on May 19, 2026.

Kyle C. Dudek
United States District Judge

6